| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| MICHAEL ROBINSON and LAYO ROBINSON, | § § § | |
| Plaintiffs, | § § | |
| *versus* | § § | CIVIL ACTION NO. 1:24-CV-97 |
| ASHLAND INC. and USA DEBUSK, LLC, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant Ashland Inc.'s ("Ashland") Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (#40) and Defendant USA DeBusk, LLC's ("DeBusk") Motion to Dismiss Plaintiffs' Third Amended Complaint (#47). Plaintiffs Michael Robinson ("M. Robinson") and Layo Robinson ("L. Robinson") (collectively, "Plaintiffs") filed a response to Ashland's motion (#42). Plaintiffs also filed a response to DeBusk's motion (#52), DeBusk filed a reply (#53), and Plaintiffs filed a sur-reply (#54). Having considered the pending motions, the submissions of the parties, and the applicable law, the court is of the opinion that both motions should be granted.

I.    Background[1]

This case arises out of Plaintiffs' contractual dealings with Ashland and DeBusk (collectively, "Defendants"). According to Plaintiffs' Third Amended Complaint ("Complaint"),

---

[1] The facts recited in this opinion are taken from Plaintiffs' Third Amended Complaint (#36). At this stage, the court does not make any factual findings or determinations; rather, the court accepts well-pleaded facts as true for the purpose of deciding the instant motion. *See, e.g.*, *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (noting that at the 12(b)(6) stage, the court must construe all facts in favor of the non-moving party); *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

Plaintiffs owned and controlled three LLCs—Plant Solutions, LLC ("Plant Solutions"), L&M Plant Solutions, LLC ("L&M Plant"), and Gulfcoast Trinity Environmental & Plant Solutions, LLC ("Gulfcoast").  There are two contracts at issue.  The first contract, the Services Agreement ("Agreement"), attached to the Complaint as Exhibit A, is ostensibly between Ashland and L&M Plant.[2]  The Agreement, dated March 1, 2013, provided that L&M Plant would supply workers to Ashland at its manufacturing facility in Port Neches, Texas.  According to Exhibit C, which is attached to the Complaint, Plaintiffs informed Ashland in 2018 that they "made the decision to convert from Plant Solutions LLC to Gulfcoast Trinity Environmental and Plant Solutions LLC" and that the new business would be minority-owned and woman-owned.  Once Defendants learned "about the company's characteristics and how [the company] qualified as a historically underutilized business," Defendants allegedly "threaten[ed] to stop all lines of communication with Plaintiffs."[3]  The Complaint states that these acts "were discriminatory and racially motivated to end the ability for Plaintiffs' minority owned business to contract with Ashland for services as it had in the past."  Plaintiffs additionally contend that their company was "the only Black/African American company contracted at that location."  Nonetheless, Plaintiffs maintain that the Agreement was never canceled and was still in full force and effect in 2022, when Ashland exposed Plaintiffs' price list to DeBusk, Plaintiffs' competitor.  Plaintiffs assert that Ashland divulged the price list and other unspecified trade secrets in order to give DeBusk a business

---

[2] The court notes that the Agreement between Ashland and L&M Plant appears to be un-executed by the parties.  *See* Exhibit A.  The validity of the contract, however, falls outside the scope of the court's analysis.

[3] Plaintiffs refer to Defendants in the collective, but seem to be referring to acts committed by Ashland, specifically.

advantage over Plaintiffs.  Plaintiffs also allege that Ashland's disclosure of their trade secrets to DeBusk in 2022 was its "final act of discrimination."

The facts surrounding Plaintiffs' relationship with DeBusk are unclear.  Plaintiffs claim that DeBusk and Plant Solutions entered into a contract in 2018 entitled Master Services Agreement ("MSA"), attached to the Complaint as Exhibit H, whereby Plant Solutions would provide contractors to DeBusk.[4]  Their relationship ended in 2022, however, when Ashland sent Plaintiffs' price list to DeBusk "in an effort to allow DeBusk to position itself to receive all the work previously given to Plaintiffs."  M. Robinson, who was apparently employed by DeBusk during this time, was subsequently terminated in 2022.[5]  Plaintiffs additionally allege that DeBusk previously "worked under Plaintiffs' Service Agreement [with] Ashland" but give no further details.

Plaintiffs brought claims against both Ashland and DeBusk for violating § 1981 of the Civil Rights Act of 1866 and for breach of contract.  Regarding the § 1981 claims, Plaintiffs allege that "Defendants discriminated against the Plaintiffs on the basis of their race and color and have a history of discriminating against individuals based on their race and color."  Plaintiffs also contend that Defendants breached the contract by failing to "perform their obligations detailed in the

---

[4] The court notes that the MSA between DeBusk and Plant Solutions appears to be un-executed by the parties.  *See* Exhibit H.  Again, the validity of the contract is not within the scope of the court's analysis.

[5] According to M. Robinson's termination letter (Exhibit G), DeBusk terminated his employment in part because he "provided business cards to [DeBusk's] customer for a company purportedly operated by [M. Robinson's] wife that offers services competitive with [DeBusk]."

Master Service Agreement and have never canceled the contract."[6]  Further, Plaintiffs assert that Defendants' acts and omissions "constituted breach of the Defendants' contractual obligations to the Plaintiffs as detailed in that certain retail installment contract-sales and credit agreement entered into between Plaintiffs and Defendants."  As a result of the Defendants' breach, Plaintiffs allegedly incurred "expenses associated with lost profit and expectancy of the  contract." Additionally, Plaintiffs maintain that DeBusk intentionally interfered with Plaintiffs' prospective contractual relationship with Ashland.  Plaintiffs contend that "[t]here was a reasonable probability that the Plaintiffs in one business name or another would have entered into a business relationship with Ashland" had it not been for DeBusk's termination of M. Robinson and the exposure and use of Plaintiffs' trade secrets to obtain a contract with Ashland.[7]

Ashland filed its pending motion to dismiss on August 22, 2024.  Ashland argues that Plaintiffs' claims against it should be dismissed because: (1) Plaintiffs lack standing to assert their state law breach of contract claims and § 1981 claims, (2) Plaintiffs fail to state a claim upon which relief can be granted because Plaintiffs failed to provide "fair notice" and meet the "facial plausibility" pleading standard, and (3) Plaintiffs' § 1981 claims are time-barred by the applicable four-year statute of limitations.  In response, Plaintiffs argue they have standing to assert their state law breach of contract and § 1981 claims, they stated a claim upon which relief can be granted against Ashland by providing fair notice pursuant to Rule 8, and their "claims are not time-barred, or at least at this stage, there is a genuine issue of material fact as to Defendants'

_____

[6] Although the "Master Service Agreement" seems to pertain to DeBusk, Plaintiffs again make no effort to differentiate between Ashland and DeBusk when alleging their breach of contract claim, referring to them simply as "Defendants."

[7] Plaintiffs add to the inconsistency of their factual allegations by accusing both Ashland and DeBusk of exposing their price list.

affirmative defense of the statute of limitations with respect to the 1981 claims asserted by Plaintiffs."[8]

DeBusk filed its pending motion to dismiss on October 2, 2024.  In support of its motion, DeBusk argues: (1) the complaint fails to satisfy Rule 8 because it is an improper shotgun pleading, (2) Plaintiffs lack standing to assert their claims, (3) Plaintiffs fail to state a claim upon which relief can be granted, and (4) Plaintiffs' Complaint should be dismissed with prejudice.  In response, Plaintiffs argue that the Complaint satisfies Rule 8, they have standing to assert their claims, and the Complaint states plausible claims for relief.  DeBusk filed a reply (#53) and Plaintiffs filed a sur-reply (#54).

II.    Analysis

    A.    Legal Standard

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)); *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus*

---

[8] The court notes that "genuine issue of material fact" is not the standard used by the court when ruling on a 12(b)(6) motion.

*Ins. Co.*, 49 F.4th 894, 896 (5th Cir. 2022); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *Oyekwe v. Rsch. Now Grp., Inc.*, 542 F. Supp. 3d 496, 502 (N.D. Tex. 2021); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021); *IberiaBank Corp.*, 953 F.3d at 345 (citing *Leal*, 731 F.3d at 410); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court, however, does not "strain to find inferences favorable to the plaintiff[ ]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Jones v. Dickerson*, No. CV H-19-3876, 2020 WL 6504456, at *2 (S.D. Tex. Nov. 5, 2020).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)); *Ramming*, 281 F.3d at 161; *Pathology Lab'y Inc. v. Mt. Hawley Ins. Co.*, 552 F. Supp. 3d 617, 621 (W.D. La. 2021). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

*accord Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022); *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker*, 938 F.3d at 734 (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355. Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see King*, 46 F.4th at 355; *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263 (5th Cir. 2019) ("Though the complaint need not contain 'detailed factual allegations,' it must contain sufficient factual material to 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *See King*, 46 F.4th at 356; *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *Whitaker v. Farmer*, No. CV M-23-339, 2024 WL 3237539, at *2 (S.D. Tex. May 28, 2024) (citing *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011)), *adopted by* No. 7:23-CV-00339, 2024 WL 3245640 (S.D. Tex. June 25, 2024). The court may, however, consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank P.L.C.*, 594 F.3d 383, 387 (5th Cir. 2010); *see Bynane v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 361 (5th Cir. 2017); *Innova Hosp. San Antonio, L.P.*, 892 F.3d at 726

("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011))).  A factual assertion or theory of liability not set forth in the complaint is not properly before the court on a motion to dismiss.  *See Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 793 n.2 (5th Cir. 2014) ("Review of a Rule 12(b)(6) dismissal is, by its very nature, limited to the allegations and theories set forth in the complaint that the district court had before it when granting the motion to dismiss."); *Vandelay Hosp. Grp. L.P. v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2020 WL 5946863, at *1 n.3 (N.D. Tex. Oct. 7, 2020) ("This court has repeatedly held that, when ruling on a motion to dismiss, the court does not consider additional facts that are alleged in a response brief but not in the complaint." (collecting cases)); *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 620 n.10 (N.D. Tex. 2017) (rejecting plaintiff's attempt to introduce a theory of liability for the first time in response to defendant's motion to dismiss).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure.  *Twombly*, 550 U.S. at 555.  Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *accord King*, 46 F.4th at 355; *IberiaBank Corp.*, 953 F.3d at 345 (quoting *Iqbal*, 556 U.S. at 678); *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015); *Leal*, 731 F.3d at 410; *Wilson*, 667 F.3d at 595.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (quoting *Iqbal*, 556

U.S. at 678); *accord Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023); *King*, 46 F.4th at 355-56; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356. "Factual allegations that are 'merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Walker*, 938 F.3d at 735. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356 ("[C]ourts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))); *Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 233 (5th Cir. 2012). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Shaw*, 918 F.3d at 419.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Shaw*, 918 F.3d at 419; *Collins v. Robinson Indep. Sch. Dist.*, No. W-21-CV-00657, 2022 WL 2019294, at *1 (W.D. Tex. June 6, 2022). In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410; *see Walker*, 938 F.3d at 734 (quoting *Grubbs*, 565 F.3d at 186).

9

Generally, at the 12(b)(6) stage, a plaintiff is simply required to inform the defendant of the factual basis of their complaint in order to avoid dismissal for failure to state a claim. *See Johnson v. City of Shelby*, 574 U.S. 10, 11-12 (2014) (citing FED. R. CIV. P. 8(a)(2)); *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016).

      B.    <u>Standing and Capacity</u>

      1.    <u>Section 1981 Claims</u>

Ashland and DeBusk argue in their respective motions that Plaintiffs lack standing to bring their § 1981 claims. Section 1981 guarantees that all persons shall have the same contractual rights as "white citizens." 42 U.S.C. § 1981(a); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 330 (2020). More specifically, § 1981 states that every person in the United States shall have the same rights as white citizens regarding "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b); *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 475 (2006); *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1015 (5th Cir. 2023); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 359 (5th Cir. 2003). Section 1981 further provides that these rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c); *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 373 n.2 (2004); *Felton v. Polles*, 315 F.3d 470, 480 (5th Cir. 2002). Hence, § 1981 prohibits racial discrimination, both public and private, in the making or enforcement of contracts. *See Olmstead v. Zimring*, 527 U.S. 581, 617 n.1 (1999); *Felton*, 315 F.3d at 480; *Am. All. for Equal Rts. v. Founders First Cmty. Dev. Corp.*, No. 4:24-CV-00327-O, 2024 WL 3625684, at *3 (N.D. Tex. July 31, 2024).

In order to establish a claim under § 1981, it must be shown that "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *see Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017); *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d, 288-89 (5th Cir. 2004); *Felton*, 315 F.3d at 483 (citing *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)).   Liability cannot be imposed under § 1981 absent proof of purposeful discrimination.  *See Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 213 (5th Cir. 2011) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 389 (1982)) ("A plaintiff must show that the discrimination was purposeful."); *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) (stating that § 1981 claims, like those brought under Title VII, require a plaintiff to establish a prima facie case of discrimination).

To recover under § 1981, a party generally must prove a deprivation of his or her own civil rights.  *See* 42 U.S.C. § 1981; *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004); *Brumfield v. Jones*, 849 F.2d 152, 154 (5th Cir. 1988) (holding that "the right to sue under the Civil Rights Act is personal in nature"); *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir. 1986) (rejecting a civil rights claim by the mother of a child traumatized by police conduct); *Brown v. Bd. of Trustees of LaGrange Indep. Sch. Dist.*, 187 F.2d 20, 25 (5th Cir. 1951) (finding that "it is elementary that [a plaintiff] has no standing to sue for the deprivation of the civil rights of others"); *Barker v. Halliburton Co.*, No. CIV.A H-07-2677, 2010 WL 3339207, at *1 (S.D. Tex. Aug. 23, 2010), *aff'd*, 645 F.3d 297 (5th Cir. 2011). When an LLC or other business entity is a

party to a contract, the owners or members of the entity lack standing to assert a § 1981 claim individually against the other contracting party when the claim belongs to the entity.  *See Domino's Pizza, Inc.*, 546 U.S. at 470-80; *Jeffrey v. Columbia Med. Ctr. at Lancaster Subsidiary L.P.*, 48 F. App'x 103, 2002 WL 31016499, at *3 (5th Cir. 2002) (holding that plaintiffs, as individuals, did not have standing to bring a § 1981 claim because it was the right of plaintiffs' PLLC to make and enforce contracts that was allegedly infringed); *Asimah v. CBL Assocs. Mgmt., Inc.*, No. 3:21-CV-50374, 2022 WL 4356761, at *2 (N.D. Ill. Sept. 20, 2022) ("[Plaintiff] cannot bring a claim under § 1981 in his name when it was his company that contractually leased the space. Because [plaintiff] has only sued in his name, he lacks standing to state a plausible claim to relief under § 1981.").

In its motion, Ashland argues that *Domino's Pizza, Inc. v. McDonald* is directly on point. The court agrees.  In *Domino's Pizza*, JWM Investments, Inc. ("JWM"), entered into a contract with Domino's Pizza, Inc. ("Domino's"), whereby JWM would construct four restaurants to lease to Domino's.  *Domino's Pizza*, 546 U.S. at 472.  Domino's then allegedly breached its contract with JWM because of Domino's racial animus toward McDonald, the sole shareholder and president of JWM.  *Id.* at 473.  McDonald brought suit against Domino's for violating § 1981, asserting that the breach harmed him personally in that he "suffer[ed] monetary damages and damages for pain and suffering, emotional distress, and humiliation."  *Id*.  The Supreme Court held that McDonald did not have standing to bring a § 1981 claim against Domino's.  *Id*. at 479-80.  The court reasoned that "a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and

enforce.'"  *Id*.  Furthermore, "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id*. at 480.

Just as the claim belonged to JWM in *Domino's Pizza*, the claim here belongs to the LLCs with which Defendants contracted.  Plaintiffs, like McDonald, brought their § 1981 claim as individuals, yet both Plaintiffs' claim and McDonald's claim were based on the alleged discriminatory conduct of the party with whom *their companies* contracted.  Even taking the Plaintiffs' allegations as true, Plaintiffs do not have standing to assert a § 1981 violation because they were not parties to either contract.  Rather, they were making and enforcing contracts on behalf of their LLC when the discrimination took place.  *See id*. at 477 ("[I]t is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts.").  According to Exhibit C, Plaintiffs informed Ashland in 2018 that they "made the decision to convert from Plant Solutions LLC to Gulfcoast Trinity Environmental and Plant Solutions LLC" and that "the new business [is] Minority owned, Small business and Woman Owned."  Plaintiffs allege that this change marks the inception of the § 1981 violation, as Ashland "threaten[ed] to stop all lines of communication with Plaintiffs" once this information was disclosed.[9]  While it is unclear whether Gulfcoast is a completely new entity or whether Plaintiffs simply changed the name of their existing business, the analysis remains the same—the cause of action does not belong to Plaintiffs individually but

---

[9] Although Plaintiffs assert the same general claims of race discrimination against DeBusk, it is worth noting that, even if Plaintiffs have standing, no facts in the Complaint suggest that DeBusk violated § 1981.  Rather, the only facts possibly amounting to intentional race discrimination in contracting implicate Ashland alone.

to the LLC that they represented during their communications with Ashland.  *See Searcy v. Hous. Lighting & Power Co.*, 907 F.2d 562, 565 (5th Cir. 1990) (holding that plaintiff had no standing to assert § 1981 claims against defendant because the alleged discrimination could be asserted to invade the legal rights of plaintiff's corporation only); *Aziz v. FedEx Ground Package Sys., Inc.*, No. 4:18-CV-00245, 2019 WL 636972, at *4 (E.D. Tex. Feb. 14, 2019) (holding that plaintiff did not have standing to sue under § 1981's Contract Clause premised on a contract between her company and another corporation, to which plaintiff was not a party).  Moreover, Plaintiffs fail to identify any other independent violation of their own constitutional rights.

Plaintiffs additionally assert in their Complaint that Ashland's discriminatory actions constituted an effort to end Plaintiffs' ability "to contract with Ashland for services as it had in the past."  Although Plaintiffs correctly state in their response that § 1981 applies to the creation of future contracts, a plaintiff must still have rights under the proposed contract in order to be afforded relief.  *See Domino's Pizza*, 546 U.S. at 476 ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, *so long as the plaintiff has or would have rights under the existing or proposed contractual relationship*." (emphasis added)).  Thus, Plaintiffs cannot properly assert a claim for relief under § 1981 in their individual capacities for discrimination regarding future contracts.  The right to sue would still belong solely to the contracting parties—in this case, the LLCs.

Alternatively, Plaintiffs maintain in their response that they have standing to assert their claims "because they benefitted from the contracts of their companies."  This argument, however, is without merit.  Courts, including the United States Court of Appeals for the Fifth Circuit, have

held that individual members or shareholders of a business entity do not have standing to bring a § 1981 claim belonging to the entity, even if the member or shareholder personally suffered an injury as a consequence. *See Painter's Mill Grille, L.L.C. v. Brown*, 716 F.3d 342, 345 (4th Cir. 2013) (dismissing plaintiffs' individual claims for relief under § 1981 because they assumed a role as agents for their LLC, and, thus, "they gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence"); *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 277 n.27 (5th Cir. 1997) (holding that plaintiff "[did] not have an individual claim for an alleged violation by [defendant] of [the corporations's] section 1981 rights, whether or not [plaintiff] suffered emotional damage as a result thereof"); *Lawrence v. DAP Prod., Inc.*, No. CV ADC-22-651, 2022 WL 2275595, at *3 (D. Md. June 23, 2022) (rejecting plaintiff's arguments that: (1) "because an LLC cannot recover compensatory damages for emotional injury, the entity's members must be permitted to pursue such claims" and (2) "because the injury would not have occurred but for [plaintiff's] race, he has alleged concrete injury to himself personally, not just to [his LLC]"). Here, any injury Plaintiffs allegedly incurred would stem directly from the violation of the rights of their LLC, not their own personal rights, as they were not parties to the contract. *See Blue Mint Pharmco, L.L.C. v. Tex. State Bd. of Pharmacy*, 667 F. Supp. 3d 473, 494 (S.D. Tex. 2023) ("The contract at issue must be between the plaintiff and the defendant; Section 1981 only allows a non-party to the contract to be held liable when the non-party and a contracting party 'are essentially one and the same.'" (quoting *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 931-33 (5th Cir. 2021))). Therefore, Plaintiffs cannot establish standing simply because they stand to benefit from any current or future contracts between Ashland and their LLC.

Section 1981 does not provide a blanket cause of action for all instances of race discrimination. Indeed, there are myriad alternative avenues for an individual to gain such relief. *See Domino's Pizza*, 546 U.S. at 474 (noting the many statutes designed to combat racial discrimination). The crux of § 1981, however, is that "[i]t bars race discrimination *in contracting.*" *Perry*, 990 F.3d at 931. Because the event giving rise to Plaintiffs' 1981 claim was Ashland's alleged refusal to conduct business with Gulfcoast due to its new status as a minority-owned and woman-owned company, Plaintiffs do not have individual standing to bring a § 1981 claim. Accordingly, Plaintiffs lack standing under § 1981, and their claims against Ashland and DeBusk must be dismissed.

### 2.    Breach of Contract Claims

In their respective motions, Ashland and DeBusk claim that Plaintiffs lack standing to bring their breach of contract claims. A plaintiff must have both standing and capacity to bring a lawsuit. *Pike v. Tex. EMC Mgmt., L.L.C.*, 610 S.W. 3d 763, 775 (Tex. 2020). Accordingly, lack of either standing or capacity would independently warrant dismissal. *Guarantee Co. of N. Am. USA v. Hous. & Land Dev. Corp.*, No. 4:23-CV-01456, 2024 WL 3431339, at *6 (S.D. Tex. May 31, 2024), *adopted by* No. 4:23-CV-01456, 2024 WL 3581978 (S.D. Tex. July 30, 2024) (citing *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 351 (5th Cir. 2021); *Pike*, 610 S.W.3d at 775). "Texas courts have had considerable difficulty in defining the relationship of the twin doctrines of capacity and standing." *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied) (citing *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 n.1 (Tex.2005)). "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity

16

when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996).

To the extent that Texas courts have analyzed this issue as a matter of standing, Defendants are correct that Plaintiffs, even as sole owners of their LLC, lack standing to assert claims individually where the cause of action belongs to the company. *Overtime Mktg. SE, L.L.C. v. Beverage*, No. 4:14-CV-434, 2015 WL 430248, at *4 (E.D. Tex. Feb. 2, 2015) (noting that plaintiff is not the same legal entity as his LLC, and thus does not have standing to assert breach of contract claims on behalf of the LLC); *Barrera v. Cherer*, No. 04-13-00612-CV, 2014 WL 1713522, at *2 (Tex. App.—San Antonio Apr. 30, 2014, no pet.) (citations omitted) (holding appellee could not maintain a forceable detainer suit as an individual when the property at issue, and thus the claim, belonged to an LLC). The fact that Plaintiffs appear to be the sole members of Plant Solutions, L&M Plant, and Gulfcoast does not change the outcome. "A limited liability company is considered a separate legal entity from its members." *Barrera*, 2014 WL 1713522, at *2 (citing *Geis v. Colina Del Rio, L.P.*, 362 S.W.3d 100, 109 (Tex. App.—San Antonio 2011); *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008)).

In light of the clarification given by the Texas Supreme Court in *Pike v. Texas EMC Management, L.L.C.*, Defendants' arguments are more accurately construed under the doctrine of capacity rather than standing. *See Pike*, 610 S.W. 3d at 779. The capacity of an individual who is domiciled in Texas to sue or be sued is determined by Texas law. *See* FED. R. CIV. P. 17(b); *Trzeciak v. City of Harlingen*, 37 F.3d 632, 1994 WL 558838, at *1 (5th Cir. 1994) ("Because [plaintiff] was domiciled in Texas and this case was removed to the Southern District

17

of Texas, under Rule 17(b) the capacity to sue is determined by Texas law."); *Sneed v. Gibbs*, No. 4:23-CV-00871, 2024 WL 3845442, at *3 (E.D. Tex. Aug. 16, 2024) (noting that the capacity to sue or be sued is determined by "the law of the state where the party is domiciled (for individuals), the party is incorporated (for corporations), or the court is located (for all other parties)"). The Texas Supreme Court held in *Pike* that the issue of whether a claim brought by an individual actually belongs to a business entity is a matter of capacity, not standing, as it is a challenge to the individual's legal authority to bring the suit. *Pike*, 610 S.W. 3d at 779. Hence, the court will treat the issue as a matter of capacity.

When a party asserts a lack of capacity defense that is based on the face of the complaint, the "defense can be asserted as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *King v. McCraw*, No. 4:10-CV-321, 2013 WL 164053, at *4 (S.D. Tex. Jan. 15, 2013). Although the Fifth Circuit has not articulated the proper vehicle for bringing a motion contesting capacity, it "implicitly has approved 12(b) motions arguing the lack of capacity." *Rice ex el. CIR v. Cornerstone Hosp. of W. Monroe*, No. 13-0362, 2013 WL 3557913, at *3 (W.D. La. July 11, 2013) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir. 1991)); *see Angers ex rel. Angers v. Lafayette Consol. Gov't*, No. 07-0949, 2007 WL 2908805, at *1 n.1 (W.D. La. Oct. 3, 2007). Moreover, other courts have recognized that "[t]he defense of lack of capacity to be sued is properly brought as a 12(b)(6) motion." *Oden Metro Turfing, Inc. v. Cont'l Cas. Co.*, No. 12-1547, 2012 WL 5423704, at *2 (W.D. La. Oct. 10, 2012); *see Johnson v. Helicopter & Airplane Servs. Corp.*, 389 F. Supp. 509, 518 n.1 (D. Md. 1974); *see also Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 50 (9th Cir. 1972) ("The question of a litigant's capacity or right to sue or to be sued generally does not affect the subject matter

jurisdiction of the district court."); *Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708, 712 (W.D. Tex. 1999) ("[G]iven that a capacity claim is generally non-jurisdictional, a 12(b)(1) motion is inappropriate."). Furthermore, the Second Circuit has acknowledged that "[a]lthough the defense of lack of capacity is not expressly mentioned in [R]ule 12(b), the practice has grown up of examining it by a 12(b)(6) motion when the defect appears upon the face of the complaint." *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 296 n.1 (1965). Thus, a 12(b)(6) motion is a proper mechanism for contesting capacity. *See Sneed*, 2024 WL 3845442, at *3 (applying the 12(b)(6) standard to the issue of capacity because the issue appeared on the face of the complaint).

A challenge to a party's privity of contract is likewise a challenge to capacity. *See Nasr v. Owobu*, No. 01-20-00631-CV, 2022 WL 3649347, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) ("The Dallas Court of Appeals and the Fourteenth Court of Appeals have repeatedly held that a challenge to a party's privity of contract is a challenge to capacity, not standing."). In Texas, privity of contract is an essential element for recovery in an action based on a contractual theory. *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016); *Interstate Contracting Corp. v. City of Dallas*, 320 F.3d 539, 543 (5th Cir. 2003); *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 739-40 (N.D. Tex. 2014); *Mission Grove, L.P.* v. *Hall*, 503 S.W.3d 546, 551-52 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A suit for breach of contract may not be maintained against a person who is not a party to the contract. *Am. Realty Tr. Inc. v. Matisse Cap. Partners L.L.C.*, 91 F. App'x 904, 911-12 (5th Cir. 2003); *accord Green v. Nationwide Mut. Ins. Co.*, No. A-12-CV-600, 2012 WL 5188031, at *4 (W.D. Tex. Oct. 17, 2012); *Mission Grove, L.P.*, 503 S.W.3d at 551-52. Generally, a contract confers duties only upon actual parties to the contract. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) ("[T]he benefits and

burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'" (quoting *House v. Hous. Waterworks Co.*, 31 S.W. 179, 179 (Tex. 1895))); *Warwick Towers Council of Co-Owners v. Park Warwick, L.P.*, 298 S.W.3d 436, 443 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Additionally, a third party may recover for breach of contract only if the contracting parties intended the contract to be for the third party's benefit. *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 584 (Tex. 2023); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999); *Davis v. MSR Holdings, L.L.C.*, No. 01-22-00451-CV, 2024 WL 3237623, at *22 (Tex. App.—Houston [1st Dist.] June 28, 2024, pet. filed); *Gainey v. Minoo, L.L.C.*, No. 02-19-00171-CV, 2019 WL 6768128, at *9 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.). Courts will not create a third-party beneficiary contract by implication. *MCI Telecomms. Corp.*, 995 S.W.2d at 651 (Tex. 1999); *Gainey*, 2019 WL 6768128, at *9. "In determining intent, courts presume that the parties contracted only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly and fully spelled out." *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 354 (Tex. App.—Fort Worth 1992, no writ); *see First Bank*, 519 S.W.3d at 103; *MCI Telecomms. Corp.*, 995 S.W.2d at 651. Moreover, "[i]f the language of the contract leaves any doubt about creating a third-party beneficiary, we resolve that doubt against conferring third-party beneficiary status." *W. Loop Hosp., L.L.C. v. Hous. Galleria Lodging Assocs., L.L.C.*, 649 S.W.3d 461, 481 (Tex. App.—Houston [1st Dist.] 2022, pet. denied), reh'g denied (May 19, 2022).

Here, although Plaintiffs are correct that this is an issue of capacity as opposed to standing, their argument quickly strays off course. Plaintiffs maintain in their response to Ashland's motion

that Ashland waived its right to challenge capacity by failing to file a verified pleading in compliance with Texas Rule of Civil procedure 93(1). Regarding matters of pleading, however, "federal courts are not governed by the state practice, but by the Federal Rules of Civil Procedure." *Follenfant v. Rogers*, 359 F.2d 30, 32 (5th Cir. 1966); *see King,* 2013 WL 164053, at *4 (noting that when a party asserts a lack of capacity to be sued defense based on the face of the complaint, the defense can be asserted via a Rule 12(b)(6) motion).  Defendants have therefore properly raised the capacity issue in their respective motions, and a verified pleading under the Texas Rules of Civil Procedure is not required.  Consequently, Plaintiffs' argument is misplaced and neither defendant has waived the right to challenge Plaintiffs' capacity to bring suit.

Plaintiffs alternatively contend that they have capacity to sue because they, as individuals, "owned and controlled" the companies that suffered injuries as a result of the alleged breaches of contract.  This argument is without merit.  *See Campos v. E. El Paso Physicians Med. Ctr., L.L.C.*, No. EP-20-CV-91-DB, 2023 WL 5687053, at *4 (W.D. Tex. June 22, 2023) (noting that standing considers whether a party has "a stake in the outcome" of a matter while capacity inquires whether they have the legal authority to bring suit).  Although Plaintiffs allege in their Complaint that they were "independent contractors contracted by Defendants," they also claim that their "*companies* . . . serviced the Defendants in the Master Service Agreement on behalf of the Plaintiffs" and refer to *"their companies'* contract with Ashland" (emphasis added).  Furthermore, the alleged Agreement (*see* Exhibit A) lists the contracting parties as "Ashland Inc." and "L&M Plant Solutions LLC."  Likewise, the alleged MSA (*see* Exhibit H) lists "USA DEBUSK LLC" and "Plant Solutions, LLC" as the contracting parties.  Plaintiffs are not named parties to the contract and, therefore, are not in privity with Defendants.

Moreover, there is no indication that the contracting parties intended Plaintiffs to be third-party beneficiaries. *Stark v. Kohrs*, No. 1:19-CV-041-LY, 2020 WL 210810, at *2 (W.D. Tex. Jan. 13, 2020) (citing *United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp.3d 584, 591-92 (S.D. Tex. 2015); *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.)) (holding that plaintiffs could not bring suit because their claims were based on contracts entered into between corporate parties, they were not signatories to the contract in issue, were not in privity, and did not plead that they qualify as third-party beneficiaries). It is not enough that Plaintiffs would benefit, either directly or indirectly, from the performance of the contract, nor is it of any import whether Ashland or DeBusk knew Plaintiffs would benefit. *See First Bank*, 519 S.W.3d at 102. Rather, of controlling importance is the absence of a clear and unequivocal intent by the parties to create a third-party beneficiary. *Id.* ("To create a third-party beneficiary, the contracting parties must have intended to grant the third party the right to be a 'claimant' in the event of a breach." (quoting *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 505 (Tex. 1975))). Thus, Plaintiffs lack the capacity to sue as individuals for breach of contract, as these claims belong to the LLCs with which Defendants were in privity of contract.

3.    <u>Intentional Interference Claims</u>

DeBusk maintains that Plaintiffs lack standing to bring their claims against it for intentional interference with contract. Texas courts recognize actions for tortious interference against a third party—i.e., a stranger to the contract—who wrongfully interferes with both existing and prospective contracts. *See El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017) (citing *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 78 (Tex. 2000)). "Tortious interference with a prospective business relationship requires a finding that the

defendant engaged in independently tortious or unlawful conduct; interference with an existing contract does not." *Id*. (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 727 (Tex. 2001)).  In order to state a claim under Texas law for tortious interference with contract, the plaintiff must allege:  (1) the existence of a contract, (2) willful and intentional interference, (3) interference that proximately caused damage, and (4) actual damage or loss.  *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 402 (5th Cir. 2013) (citing *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 456 (Tex.1998)).

Plaintiffs allege that "DeBusk interfered with Plaintiffs['] prospective contractual relationship with Ashland and intentionally and wilfully interfered with the contract or prospective business relationship to persuade business to its company."  Additionally, Plaintiffs contend "Debusk's conduct was independently tortious or unlawful in that it wrongfully terminated Michael Robinson and exposed Plaintiffs' trade secrets, including, but not limited to their price lists and appropriated them for their own use in obtaining a contract with Ashland."  While Plaintiffs do not identify specifically the contract with which DeBusk allegedly interfered, the court infers that they are referencing the Agreement, attached as Exhibit A.  As previously discussed, the Agreement gives no indication that the Plaintiffs as individuals are parties to the contract, nor do Plaintiffs make any such claim in their Complaint.  Thus, Plaintiffs cannot maintain a claim for intentional interference with a contract to which they are not parties.  *Hill v. Baylor Univ. Med. Ctr. of Dall.*, No. 05-97-00238-CV, 2000 WL 31795, at *3 (Tex. App.—Dallas Jan. 18, 2000, pet. denied) ("Because the cause of action for tortious interference is recognized for 'a party to a contract,' we hold [plaintiff] had no standing to bring suit in his individual capacity."); *see Griffin v. Jones*, 170 F. Supp. 3d 956, 968 (W.D. Ky. 2016) (holding

23

the manager of the LLCs could not maintain a tortious interference with contract claim individually based on agreements between the LLCs and the management services provider).

Plaintiffs also allege that DeBusk interfered with their ability to contract with Ashland in the future.  Based on the numerous inadequacies in Plaintiffs' Complaint, the court doubts the Plaintiffs' ability to allege facts amounting to a claim for tortious interference.  Nevertheless, even if Plaintiffs were to succeed in such an endeavor, any resulting claim would belong to Plaintiffs' LLCs as the parties to any prospective contract.  *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 509-10 (5th Cir. 2012) (citing *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250 (Tex. App.—Dallas 2005, no pet.)) (holding that the plaintiff lacked standing to bring his tortious interference claim because he was not a party to the contract); *Ben E. Keith, Co. v. Dining All., Inc.*, No. 4:20-CV-133-A, 2021 WL 5909189, at *5 (N.D. Tex. Dec. 14, 2021) ("[O]ne who is not a party to a contract cannot assert a claim for tortious interference.").  Plaintiffs allege in their Complaint that, had it not been for DeBusk's actions, they probably could have conducted future business with Ashland "in one business name or another."  Plaintiffs thereby recognize that any prospective dealings with Ashland would have involved one or more of Plaintiffs' LLCs.  As a result, Plaintiffs, acting as individuals, do not have standing to bring their intentional interference claims.

In sum, the court finds that Plaintiffs lack standing to bring their claims for § 1981 violations and tortious interference, as the causes of action belong to their LLCs, and not to Plaintiffs as individuals.  Similarly, the court finds that Plaintiffs lack capacity to sue Ashland and DeBusk for breach of contract because Plaintiffs were not individually named as parties to the alleged contracts, nor is there any indication that Plaintiffs were third-party beneficiaries.  In light

24

of the court's analysis regarding standing and capacity, the court declines to address the alternative grounds for dismissal urged in Defendants' motions.[10]  Lack of standing or capacity is enough, on its own, to warrant dismissal.  *See Guarantee Co. of N. Am. USA*, 2024 WL 3431339, at *6 ("Because lack of capacity or standing would independently require dismissal, *see Maxim*, 11 F.4th at 351; *Pike*, 610 S.W.3d at 775, absence of either is fatal.").

    C.   <u>Opportunity to Amend</u>

In its motion, DeBusk requests that the court dismiss this case with prejudice.  The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave" to amend pleadings "when justice so requires."  FED. R. CIV. P. 15(a)(2); *accord Morgan v. Chapman*, 969 F.3d 238, 248 (5th Cir. 2020); *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 740 (5th Cir. 2019); *Brown v. Taylor*, 911 F.3d 235, 246 (5th Cir. 2018).  The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.  *DeGruy v. Wade*, 586 F. App'x 652, 655 (5th Cir. 2014) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)); *Tex. Indigenous Council v. Simpkins,* 544 F. App'x 418, 421 (5th Cir. 2013); *Johnson v. Epps*, 479 F. App'x 583, 588 (5th Cir. 2012).  The language of Rule 15(a) "evinces a bias in favor of granting leave to amend."  *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 125 (5th Cir. 2019) (quoting *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2017)); *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018); *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 944 (5th Cir. 2018).

---

[10] Defendants aver that Plaintiffs have failed to state a claim upon which relief can be granted, and that their  § 1981 claims fall outside of the applicable statute of limitations.

25

Leave to amend, however, is by no means automatic.  *Body by Cook, Inc.*, 869 F.3d at 391; *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 391 (5th Cir. 2009); *Newby v. Enron Corp.*, 542 F.3d 463, 469 (5th Cir. 2008); *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006).  While leave to amend should be freely given, that generous standard is tempered by the necessary power of a district court to manage a case.  *Leal*, 731 F.3d at 417; *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008); *Fin. Acquisition Partners L.P.*, 440 F.3d at 291.  Thus, granting leave to amend a pleading is within the sound discretion of the trial court.  *McGee v. Citi Mortg., Inc.*, 680 F. App'x 287, 291 (5th Cir. 2017); *see Benson v. St. Joseph Reg'l Health Ctr.*, 575 F.3d 542, 550 (5th Cir. 2009).

Although "[t]he court should freely give leave when justice so requires" under Rule 15(a), the Fifth Circuit has observed that this "is not a mechanical absolute and the circumstances and terms upon which such leave is to be 'freely given' is committed to the informed, careful judgment and discretion of the Trial Judge as [s]he superintends the development of a cause toward its ultimate disposition." *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 468 (5th Cir. 1967) (quoting *Lone Star Motor Imp., Inc. v. Citroen Cars Corp.*, 288 F.2d 69, 75 (5th Cir. 1961)); *accord Body by Cook, Inc.*, 869 F.3d at 391.  Considerations aiding in this determination include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Body by Cook, Inc.*, 869 F.3d at 391 (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)); *Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010); *Bridge Assocs.*

26

*L.L.C.*, 561 F.3d at 391.  If any one of these factors applies, leave may be withheld.  *Rosenblatt*, 607 F.3d at 419; *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (explaining, conversely, that "[a]bsent any of these factors, the leave should be 'freely given'" (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

When considering whether leave should be granted, courts may consider a plaintiff's repeated failures to cure deficiencies by amendments previously allowed.  *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).  "Pleadings review is not a game where the plaintiff is permitted to file serial amendments until he finally gets it right." *United States ex rel. Adrian v. Regents of Univ. of Calif.*, 363 F.3d 398, 404 (5th Cir. 2004). As the Fifth Circuit has commented:

> All of this leads us to the difficult task of 'assur(ing) a party a fair opportunity to present his claims and defenses,' while at the same time protecting a 'busy district court (from being) imposed upon by the presentation of theories seriatim.'

*Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (quoting *Foman*, 371 U.S. at 182).  The Fifth Circuit has consistently held that, "at some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."  *Malsom v. Match.com, L.L.C.*, 540 App'x 412, 416 (5th Cir. 2013) (quoting *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003)).

Here, Plaintiffs have had fair opportunity to make their case and have failed to do so. Plaintiffs have already consumed substantial judicial resources by filing *three* prior complaints. Furthermore, Plaintiffs have been on notice of the defects in its pleading, specifically with regard to standing, since Ashland filed its motion to dismiss Plaintiffs' original petition (#6) on March 22, 2024.  Yet, Plaintiffs repeatedly failed to correct this glaring deficiency.  *See Blair v.*

27

*Deutsche Bank Nat. Tr. Co.*, 609 F. App'x 767, 770 (5th Cir. 2015) (holding "well-established law prevents [plaintiff] from establishing standing, and more specific allegations would not fix that defect[,]" therefore dismissal without leave to amend was not an abuse of discretion).  Moreover, even if the court were to allow Plaintiffs one last opportunity to amend, it is questionable whether the proper plaintiffs in this case, the LLCs, would be legally able to bring suit.[11]  At this juncture, permitting Plaintiffs yet another opportunity to amend would be an inefficient use of the parties' and the court's resources.  *See Stark*, 2020 WL 210810, at *2 ("Because [Plaintiffs] do not have standing to bring their claims against Defendants in their individual capacities, granting leave to amend would be futile.").  Accordingly, the court denies Plaintiffs leave to amend their pleadings. *See Real Estate Innovations, Inc. v. Hous. Ass'n of Realtors, Inc.*, 422 F. App'x 344, 351 (5th Cir. 2011) (affirming district court's order denying plaintiff leave to amend after it had already filed a fourth amended complaint); *Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (upholding dismissal with prejudice of plaintiffs' RICO claims and denial of leave to amend in light of the fact that plaintiffs "had several opportunities to state their best case"); *Herrmann Holdings Ltd.*, 302 F.3d at 558 (holding that court's denial of permission to amend after the plaintiffs had already twice amended the complaint was not an abuse of discretion); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (affirming refusal to amend after plaintiff had filed complaint, RICO case statement, and reply to motion to dismiss); *Varela v. Gonzales*, No. 3:13-CV-1278-B, 2014 WL 1284985, at *7 (N.D. Tex. Mar. 31, 2014) (denying plaintiffs opportunity to amend after they had already amended their complaint three times);

---

[11] DeBusk argues in its motion that the defects with Plaintiffs' claims are incurable, as "the Texas Secretary of State website indicates that Plant Solutions is an inactive entity that forfeited its legal existence in January 2019 under Section 171.309 of the Tax Code for failing to pay taxes."

*Ponder Research Grp., L.L.P. v. Aquatic Navigation, Inc.*, No. 4:09-CV-322-Y, 2010 WL 1817036, at \*7 (N.D. Tex. May 4, 2010) ("Plaintiffs have failed to take advantage of ample opportunities—an original complaint, amended complaint, and briefing of two motions to dismiss—to establish the sufficiency of their pleadings.").

III.    Conclusion

Consistent with the foregoing analysis, Defendant Ashland's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Third Amended Complaint (#40) and Defendant DeBusk's Motion to Dismiss Plaintiffs' Third Amended Complaint (#47) are GRANTED. The case is dismissed with prejudice.

SIGNED at Beaumont, Texas, this 18th day of December, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE